# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**THOMAS J. FITZGERALD,**

        **Plaintiff,**

        v.                                                           **Case No. 18-CV-317**

**NANCY A. BERRYHILL,**

        **Defendant.**

## DECISION AND ORDER

### PROCEDURAL HISTORY

Plaintiff Thomas J. Fitzgerald alleges he has been disabled since December 15, 2011, due to depression, anxiety, attention-deficit disorder, and polysubstance abuse/dependence. (Tr. 91, 106.) In August 2013 he applied for disability insurance benefits and supplemental security income. (Tr. 204-07, 211-16.) After his applications were denied initially (Tr. 91-122) and upon reconsideration (Tr. 123-48), a hearing was held before an administrative law judge (ALJ) on October 26, 2016 (Tr. 30-90). On February 17, 2017, the ALJ issued a written decision concluding Fitzgerald was not disabled. (Tr. 13-23.) The Appeals Council denied Fitzgerald's request for review on January 18, 2018. (Tr. 1-3.) This action followed. All parties have consented to the full

jurisdiction of a magistrate judge (ECF Nos. 4, 7), and the matter is now ready for resolution.

**ALJ'S DECISION**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Fitzgerald "has not engaged in substantial gainful activity since December 15, 2011, the alleged disability onset date." (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 118, 1121 (7th Cir. 2014). The ALJ concluded that Fitzgerald has the following severe impairments: "anxiety disorder, affective disorder, and substance addiction disorder." (Tr. 15.)

At step three, the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.1526, 416.920(d) and 416.926) (called "The Listings.") If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-

2

month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Fitzgerald "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 15.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the claimant's ability to perform both physical and mental work-related activities on a regular and continuing basis despite her impairments. *Moore*, 743 F.3d at 1121. In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529; 416.929; SSR 96-4p. In other words, the RFC determination is a "function by function" assessment of the claimant's maximum work capability. *Elder v. Asture*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Fitzgerald has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to understanding, remembering, and carrying out simple instructions; he is limited to simple, routine, and repetitive tasks; the claimant is limited to no contact with the public and occasional contact with supervisors and coworkers.

(Tr. 17.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1526, 416.965. Fitzgerald's past relevant work was as a construction

3

worker, sales attendant, and stock clerk. (Tr. 21.) The ALJ concluded he is unable to perform any past relevant work. (Tr. 20.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. At this step the ALJ concluded that, considering Fitzgerald's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Fitzgerald can perform. (Tr. 21.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE) who testified that a hypothetical individual of Fitzgerald's age, education, work experience, and RFC could perform the requirements of a marker, garment sorter, and classifier. (Tr. 21-22.) After finding that Fitzgerald could perform work in the national economy, the ALJ concluded that he is not disabled. (Tr. 22-23.)

## STANDARD OF REVIEW

The court's role in reviewing an ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing

conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the Court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). "This deference is lessened, however, where the ALJ's findings rest on an error of fact or logic." *Thomas*, 745 F.3d at 806. If the ALJ committed a material error of law, the court cannot affirm the ALJ's decision regardless of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

## ANALYSIS

Fitzgerald argues that the ALJ erred in evaluating and giving weight to the opinions of treating psychiatrist Dr. Jay Winston and treating psychotherapist Deborah Klecker.

### I. Dr. Jay Winston

Fitzgerald's treating psychiatrist Jay Winston, D.O., opined that Fitzgerald has (1) moderate to marked limitations getting along with coworkers or peers; (2) marked limitations understanding, remembering, and carrying out short and simple instructions,

5

sustaining an ordinary routine without special supervision, and responding appropriately to changes in the work setting; (3) at least marked limitations understanding and remembering detailed instructions, and completing a normal workday and workweek without interruptions from psychologically based symptoms;[1] and (4) an inability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual with ordinary tolerances. (Tr. 939.)

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 Fed. Appx. 247, 250 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)). "An ALJ must offer

---

[1] Dr. Winston checked both the "markedly limited" and "unable to perform" boxes with regard to Fitzgerald's ability to understand and remember detailed instructions, and his ability to complete a normal workday and workday without interruptions from psychologically based symptoms.

6

goods reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citation omitted).

The ALJ found that Dr. Winston's findings were inconsistent with other evidence in the record, including Dr. Winston's own treatment notes:

> Although Dr. Winston is a treating physician, his findings are contrary to substantial other evidence in the record including the doctor's own treatment notes. The descriptions of [Fitzgerald's] symptoms in Dr. Winston's treatment notes suggest he was generally doing well with normal mood, normal sleep, and normal energy. The mental status findings, which included well-groomed, cooperative, calm, speech fluent, normal mood, oriented, attention and concentration intact, memory intact, were also generally near normal. In addition, the limitations Dr. Winston set for [Fitzgerald] seem extreme when compared to [Fitzgerald's] daily activities which include caring for personal needs independently, cooking simple meals, caring for his daughter, performing household chores, and managing his own finances.

(Tr. 19.) (Internal citations omitted.) As such, the ALJ gave some weight to Dr. Winston's opinion. (*Id.*)

Fitzgerald argues that the ALJ failed to properly apply the 20 C.F.R. § 404.1527(c) factors in rejecting the opinion of Dr. Winston. (ECF No. 16 at 14-19.) He contends that the ALJ exaggerated his daily activities and cherry-picked the medical records in finding Dr. Winston's opinion to be inconsistent with other evidence in the record. (*Id.* at 15-19.) He also contends that the ALJ failed to consider his long-term treatment relationship with Dr. Winston as well as Dr. Winston's specialty. (*Id.* at 14-15.)

The court agrees that the ALJ failed to properly evaluate Dr. Winston's opinion. The ALJ found the limitations in Dr. Winston's opinion to be "extreme when compared

7

to [Fitzgerald's] daily activities which include caring for personal needs independently, cooking simple meals, caring for his daughter, performing household chores, and managing his own finances." (Tr. 19.) However, the ALJ overstated the extent of Fitzgerald's daily activities. Fitzgerald is limited to cooking eggs, instant oatmeal, fruit, toast, tuna, and frozen vegetables. (Tr. 54, 58, 262, 283, 368-69.) He is unable to follow a recipe without assistance. (Tr. 283, 368-69.) In addition, Fitzgerald only has custody of his daughter every other weekend and is unable to care for her on his own. (*See* Tr. 38, 66, 261, 275, 282, 361, 367, 590, 680.) Furthermore, Fitzgerald has limited experience managing his finances and would need assistance handling a bank account and paying bills. (*See* Tr. 263, 272, 277.)

The ALJ also overlooked the limits on Fitzgerald's daily activities that were consistent with Dr. Winston's opinion. Fitzgerald struggles to maintain concentration (especially while reading) and needs reminders to get things done. (*See* Tr. 262, 265, 276, 283, 285-86, 369, 372-73, 601-03.) He also isolates himself to his parents' house (*see* Tr. 55, 62-63, 264-65, 278, 285, 367, 372, 580) and experiences anxiety with respect to normal, everyday social encounters (*see* Tr. 60-62, 64, 265, 267, 285, 370, 372, 377, 572-73, 578, 581-82, 596, 601, 604, 681, 923).

The Commissioner argues:

> By [Fitzgerald's] own account … he was able to handle his personal needs, cook simple[] meals, and perform household chores. And even if [Fitzgerald] needed childcare help from his parents, that is not enough to undercut the ALJ's well-reasoned decision and his evaluation of the

8

> medical records, as no working parent raises children without a helping hand. The Court should decline [Fitzgerald's] invitation to reweigh the evidence or substitute its own judgment for that of the ALJ.

(ECF No. 17 at 9.) (Internal citations omitted.) However, as shown above, Fitzgerald requires more than just a "helping hand" to care for his daughter, and his ability to dress and bathe himself, cook eggs and instant oatmeal, and do laundry once every other week (Tr. 262, 283-84, 369-70) is not *inconsistent* with Dr. Winston's opinion. *Cf. Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (finding that the ALJ did not provide any explanation for his belief that the plaintiff's activities were inconsistent with the treating physician's opinion and his failure to do so constitutes error).

The ALJ also found that Dr. Winston's opinion was inconsistent with his own treatment notes:

> The descriptions of [Fitzgerald's] symptoms in Dr. Winston's treatment notes suggest he was generally doing well with normal mood, normal sleep, and normal energy. The mental status findings, which included well-groomed, cooperative, calm, speech fluent, normal mood, oriented, attention and concentration intact, memory intact, were also generally near normal.

(Tr. 19.) While a few of Dr. Winston's treatment notes find that Fitzgerald had normal mood, normal sleep, and normal energy (Tr. 705, 708, 945-46), a majority of his notes do not (*see* Tr. 704, 706-07, 941-44, 947). In addition, the notes referenced by the ALJ "simply describe how [Fitzgerald] presented *on the days of [his] appointments*. They were not general assessments." *See Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (emphasis in original).

Furthermore, the written portions of Dr. Winston's treatment notes are largely illegible. (*See* Tr. 529-35, 704-08, 938-39, 941-47.) It is unclear whether Dr. Winston's handwritten notes contain findings that are consistent with the limitations set forth in his opinion. *See Moore v. Calvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (stating that "[i]f the ALJ was unable to discern the basis of the treating physician's opinion, then the proper course would have been to solicit additional information from [the treating physician]"); *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) (holding that "[a]n ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable"); *Costa v. Berryhill*, No. 17-CV-5068, 2018 WL 6621324 at *9 (N.D. Ill. Dec. 18, 2018) ("In remanding the case, the Court … notes that many portions of [the treating physician's] progress notes are not entirely legible, the ALJ should consider whether it is appropriate to contact [the treating physician] to obtain more legible copies or an explanation of the progress notes in the record."); *Koppers v. Colvin*, No. 15-C-5471, 2016 WL 3136916 at *4 (N.D. Ill. June 6, 2016) (finding that the ALJ had a duty on remand to re-contact the treating physician to "request legible copies of his notes … or an explanation of the findings contained therein"); *Torres v. Colvin*, 13-CV-125-PRC, 2014 WL 4587153 at *15 (N.D. Ind. Sept. 15, 2014) (finding that the ALJ should have contacted the claimant's treating physician for clarification of the physician's difficult-to-read treatment records); *cf. Campbell v. Astrue*, 627 F.3d 299, 301 (7th Cir. 2010) ("An ALJ may

not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability.").

Because of these errors, substantial evidence does not support the ALJ's decision to afford less than controlling weight to Dr. Winston's opinion. On remand, the ALJ shall reevaluate the weight given to Dr. Winston's opinion in light of the record evidence and the 20 C.F.R. § 404.1527(c) factors, including Fitzgerald's treatment relationship with Dr. Winston as well as Dr. Winston's psychiatry specialty.

## II. Deborah Klecker

Fitzgerald's psychotherapist Deborah Klecker, M.S., LPC, opined that Fitzgerald has: (1) no limitations performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, sustaining an ordinary routine without special supervision, interacting appropriately with the general public, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness; (2) mild limitations remembering locations and work-like procedures, understanding, remembering, and carrying out short and simple instructions, and getting along with coworkers or peers; (3) moderate limitations making simple work-related decisions, accepting instructions and responding appropriately to criticism from supervisors, and being aware of normal hazards and taking appropriate precautions; (4) marked limitations understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, working in coordination

11

with or proximity to others without being distracted by them, asking simple questions or requesting assistance, responding appropriately to changes in the work setting, setting realistic goals or making plans independently of others, and tolerating normal levels of stress; and (5) extreme limitations completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number of and length of rest periods, and traveling in unfamiliar places or using public transportation. (Tr. 271-72.) She also opined that Fitzgerald's impairments would cause him to be off-task at least 20 percent of the time and miss 5-8 days of work per month. (Tr. 272.)

As a licensed counselor, Klecker qualifies as an "other source." Although her opinion is not entitled to controlling weight, SSR 06-3p, the ALJ is still required to consider the 20 C.F.R. § 404.1527(c) factors in determining how much weight to give her opinion. *Id.* The ALJ found that many of Klecker's findings were inconsistent with other evidence in the record:

> Ms. Kleeker [sic] is not an acceptable medical source. Ms. Kleeker's [sic] 41 to 50 GAF score is given little weight. GAF scores in general are of limited evidentiary value. …. The GAF scores are inconsistent with the treatment notes from that same period, which indicate, although the claimant struggled to maintain sobriety and reported some episodes of increased stress, and anxiety included increased anxiety in social situations, his condition remained generally stable. Nevertheless, Ms. Kleeker's [sic] observations, regarding the problems with social functioning, concentration, persistence, or pace, and stress are helpful in understanding [Fitzgerald's] limitations. The finding that [Fitzgerald] would be able to understand, remember, and carry out simple instructions is consistent with other evidence in the record. The findings of marked or extreme limitations

> in understanding, remembering and carrying out detailed instructions, working with or near others, asking questions, adapting to changes, setting realistic goals, tolerating normal levels of stress, completing a normal workday, and performing at a reasonable pace and the finding that he would be off task at least 20% of the workday are not. Ms. Kleeker [sic] does not provide any explanation for finding the claimant would be absent up to eight days a month, which appears speculative.

(Tr. 20.) As such, the ALJ gave her opinion only "some" weight.

Fitzgerald argues that the ALJ "took only those portions of [Klecker's] assessment that might support Mr. Fitzgerald's return to work (her assessment that he can perform simple tasks) and rejected any assessment that might prove work-preclusive (her assessment that he would have marked difficulties in responding to criticism from supervisors and marked-to-extreme problems with concentration.)" (ECF No. 16 at 20.)

The court agrees with Fitzgerald and finds that the ALJ failed to properly evaluate Klecker's opinion. Klecker's findings of marked or extreme limitations in understanding, remembering, and carrying out detailed instructions, working with or near others, adapting to changes, completing a normal workday, and performing at a reasonable pace (Tr. 270-72) are consistent both with the findings in Dr. Winston's opinion (Tr. 939) and other evidence in the record (*see e.g.,* Tr. 40-41, 46-48, 51-53, 64-66, 265-67, 283-87, 572, 581-82, 587, 596, 601-02, 677, 680, 923). *See Gerstner*, 879 F.3d at 262 (finding that the ALJ overlooked the extent to which the physician's opinions were consistent with the opinions of other medical sources who treated claimant).

The Commissioner argues that "the ALJ reviewed all of [Fitzgerald's] treatment Ms. Klecker [sic] and reasonably found that, overall, [Fitzgerald's] depression and anxiety remained stable for the period under consideration." (ECF No. 17 at 11.) (Citations omitted.) However, as Fitzgerald points out, "stable" refers to a condition that is unchanged rather than improved or nonsevere. *See Seruya v. Berryhill*, No. 16-C-10896, 2017 WL 4650886 at *5 (N.D. Ill. Oct. 17, 2017) ("But 'stable' merely means that Plaintiff's condition is unchanged; 'it does not address the level of what his condition was.'"). "One can be stable and yet disabled." *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1030 (E.D. Wis. 2004). The Commissioner also argues that, "while the ALJ acknowledged that Ms. Klecker's notes showed that [Fitzgerald] sometimes struggled with his symptoms, he was generally under control[.]" (ECF No. 17 at 11.) (Internal citations omitted.) But, again, "symptoms may be disabling and yet accurately characterized as being under control." *Herron v. Colvin*, No. 14-CV-56, 2014 WL 6607179 at *7 (E.D. Wis. Nov. 19, 2014).

Given that the ALJ failed to provide any reasons explaining why Klecker's findings of marked or extreme limitations in understanding, remembering, and carrying out detailed instructions, working with or near others, adapting to changes, completing a normal workday, and performing at a reasonable pace are inconsistent with the record, remand is necessary. On remand, the ALJ shall reevaluate Klecker's opinion in light of the record evidence and the 20 C.F.R. § 404.1527(c) factors.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and this matter is **remanded** for further proceedings consistent with this decision. The clerk of court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 13th day of February, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge